



## MEMORANDUM OPINION

No. 04-11-00488-CV

Sharyll S. **TENEYUCA** and Placido Salazar,
Appellants

v.

### BEXAR COUNTY PERFORMING ARTS CENTER FOUNDATION
and Bexar County, Texas,
Appellees

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-10558
Honorable Victor Hugo Negron Jr., Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:      Catherine Stone, Chief Justice
              Karen Angelini, Justice
              Rebecca Simmons, Justice

Delivered and Filed:  June 6, 2012

AFFIRMED

Appellants Sharyll S. Teneyuca and Placido Salazar appeal the trial court's judgment dismissing their claims for lack of standing. We affirm.

### BACKGROUND

Teneyuca and Salazar sued the Bexar County Performing Arts Center Foundation ("the Foundation) and Bexar County ("the County"), alleging that the County breached its contract with voters. In their petition, they alleged the following facts:

1. On May 10, 2008, voters approved Proposition 4, which asked voters to authorize the County "to provide for the planning, acquisition, establishment, development or construction of a new preforming arts center, the renovation and improvement of the Dolph and Janey Briscoe Western Art Museum, and the renovation and improvement of the Alameda Theater, and any related infrastructure."

2. On June 30, 2008, the County and the Foundation entered into a development agreement with the City of San Antonio.

3. Under the development agreement, the County agreed to provide to the Foundation a portion of the funding to develop and construct the Performing Arts Center through issuance and sale of bonds.

4. Further, under the agreement, the Foundation will own, renovate, and operate the San Antonio Municipal Auditorium.

5. On August 8, 2008, the City of San Antonio conveyed the real property known as the Municipal Auditorium to the Foundation.

6. The Foundation then applied to the Historic and Design Review Commission for a Certificate of Appropriateness.

7. In the application, the Foundation indicated it would "partially demolish and rehabilitate the Municipal Auditorium as a performance art center."

8. The Foundation has now begun demolition of the Municipal Auditorium using Proposition 4 funds approved by the voters and given by the County to the Foundation under the development agreement.

Attached to their petition was a sample ballot of Proposition 4. Proposition 4 asked the voters whether they were for or against the following:

> Authorizing Bexar County, Texas, to provide for the planning, acquisition, establishment, development, or construction of a new performing arts center, the renovation and improvement of the Dolph and Janey Briscoe Western Art Museum, and the renovation and improvement of the Alameda Theater, and any related infrastructure, and to impose a hotel occupancy tax at the maximum rate of one and three quarters percent (1 3/4%) of the price paid for a room in a hotel located in Bexar County, Texas, and a short term motor vehicle rental tax at a maximum rate of five percent (5%) on the gross rental receipts from the rental of motor vehicles in Bexar County, Texas, for the purpose of financing the venue project.

According to Teneyuca and Salazar, because the voters did not approve "renovation" of the Municipal Auditorium, and instead approved "the development or construction of a *new* performing arts center," the County breached its "contract with the voters." They sought specific performance of the creation of a new performing arts center. They also sought to enjoin the County and the Foundation from using Proposition No. 4 funds to demolish, destroy, or remove any material, or in any other way change the character of the Municipal Auditorium.

The County and the Foundation filed a plea to the jurisdiction, arguing that Teneyuca and Salazar lacked standing to bring their claims. On June 28, 2011, the trial court granted the plea and dismissed Teneyuca and Salazar's claims. In an attempt to address the issue of standing, on July 1, 2011, Teneyuca and Salazar filed a First Amended Class Action Petition, Application for Temporary Restraining Order, Temporary Injunction and for Permanent Injunction. On July 5, 2011, the trial court considered the amended petition and Teneyuca and Salazar's motion for reconsideration, and again concluded that Teneyuca and Salazar lacked standing to assert their claims contained in the amended petition. Therefore, the court dismissed all their claims and causes of action. Teneyuca and Salazar appeal.

## DISCUSSION

On appeal, Teneyuca and Salazar argue they have standing to bring their claims under the rule that allows taxpayers to bring an action to restrain the illegal expenditure of tax funds. As a general rule, to have standing, a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury. *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001). The Texas Supreme Court has judicially created an exception to this general rule, holding that in limited circumstances, some taxpayers, without demonstrating a particularized injury, have

standing to enjoin the illegal expenditure of public funds. *Id.* at 179. Implicit in this rule are two requirements: (1) that the plaintiff is a taxpayer; and (2) that public funds are expended on the allegedly illegal activity. *Id.*

With regard to the first requirement, the supreme court has held that not all taxpayers have standing. According to the court, whether a plaintiff has taxpayer standing depends upon the type of tax he or she claims to have paid. *Id.* Thus, the supreme court held in *Williams*, 52 S.W.3d at 180, that the payment of sales taxes was not sufficient to give rise to taxpayer standing. In so holding, the court noted that courts in other states had determined under their applicable state statutes that a sales tax is imposed on the seller of goods, not on the purchaser. *Id.* Thus, these courts reasoned that "although a retailer may pass the sales-tax cost on the purchaser, paying sales tax cannot make a purchaser a taxpayer for purposes of standing." *Id.* The supreme court explained that in Texas, however, "both sellers and purchasers are liable to the state for sales tax." *Id.* "Therefore, in Texas, unlike the other jurisdictions discussed above, both sellers and purchasers are considered taxpayers." *Id.* "Despite this distinction," the court was "not persuaded that paying sales tax should be grounds for conferring taxpayer standing." *Id.* The court reasoned the following:

> Taxpayer standing is a judicially created exception to the general standing rule. We have already limited the applicability of this exception by narrowly defining the type of action a taxpayer can maintain. A taxpayer may maintain an action solely to challenge proposed illegal expenditures; a taxpayer may not sue to recover funds previously expended, *Hoffman v. Davis*, 128 Tex. 503, 100 S.W.2d 94, 96 (1937), or challenge expenditures that are merely "unwise or indiscreet," *Osborne*, 177 S.W.2d at 200. Underpinning these limitations is the realization that "'[g]overnments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review'." *Bland*, 34 S.W.3d at 555 (quoting *Osborne*, 177 S.W.2d at 200). Extending taxpayer standing to those who pay only sales tax would mean that

> even a person who makes incidental purchases while temporarily in the state could maintain an action. This would eviscerate any limitation on taxpayer suits. It would allow a person with virtually no personal stake in how public funds are expended to come into court and bring the government's actions under judicial review. This is not what this Court envisioned in crafting the taxpayer-standing exception. *See Osborne*, 177 S.W.2d at 200. Accordingly, we hold, for prudential reasons, that paying sales tax does not confer taxpayer standing upon a party.

*Id.*

The project at issue in this case is being funded with a hotel occupancy tax and a short-term motor-vehicle rental tax. Teneyuca argues that she has standing because she rented a car and thus paid the short-term motor-vehicle rental tax that is used to fund the project. The County and the Foundation respond that paying a visitor tax, like the short-term motor-vehicle rental tax, is insufficient to confer standing. We agree with the County and the Foundation. As in *Williams*, extending taxpayer standing to someone who has paid a "visitor" tax would allow a person with virtually no personal stake in how public funds are expended to come into court and bring the government's actions under judicial review. *See id.* Taxpayer standing is a limited judicially-created exception. *See id.* Whether it should be extended to those who have paid "visitor" taxes is best left to the Texas Supreme Court. Thus, following the reasoning in *Williams*, we hold that paying a "visitor" tax, like the short-term motor-vehicle rental tax at issue in this case, does not confer taxpayer standing upon a party. *See id.*

Teneyuca and Salazar also argue that they have standing because they have paid ad-valorem taxes from 2008 to the present.[1] However, ad-valorem taxes are not being used to fund

---

[1] We note that in appellants' original petition, with respect to standing, Teneyuca and Salazar alleged only that they were residents of Bexar County. In an attempt to correct the petition's deficiencies with respect to standing, they filed an amended petition alleging they both pay ad-valorem taxes. We also note that in the amended petition, Teneyuca alleged that she had rented a vehicle in Bexar County, Texas, and had thus paid the five percent short-term motor-vehicle rental tax used to fund the project at issue. There is no such similar allegation made by Salazar in the amended petition.

the project at issue. In *Scarbrough v. Metropolitan Transit Authority*, 326 S.W.3d 324, 336 (Tex. App.—Houston [1st Dist.] 2010, pet. denied), the First Court of Appeals held that paying property taxes was not sufficient to confer taxpayer standing when the referendum at issue did not authorize the transit authority to use property taxes to fund the project. In so holding, the court pointed to the supreme court's opinion in *Williams*, 52 S.W.3d at 178, where the supreme court explained that "to be entitled to taxpayer standing a plaintiff 'must prove that the government is actually expending money on the activity that the taxpayer challenges' and that 'merely demonstrating that tax dollars are spent on something related to the allegedly illegal conduct is not enough.'" *Scarbrough*, 326 S.W.3d at 335 (quoting *Williams*, 52 S.W.3d at 181). The First Court of Appeals then noted that "[t]he relationship between Scarbrough's payment of property taxes here and the anticipated allegedly illegal expenditures by METRO is much more attenuated than the relationship between the expenditure of tax funds and the allegedly unconstitutional expenditure of those funds in *Williams*." *Id.* at 336. The court explained that "[i]n *Williams*, the plaintiff paid property taxes directly to the entity, Tarrant County, which supported the allegedly illegal activity." *Id.* The First Court of Appeals reasoned that "[b]y contrast, in approving Resolution 2003-93, about which Scarbrough complains, the voters authorized the funding of the METRO transit system plan as described in the resolution by the issuance of bonds, notes and other obligations payable from METRO's sales and use tax revenue, as well as by 'federal capital assistance under applicable federal law and regulations or the commitment of a substantial amount of private funds.'" *Id.* Thus, the First Court of Appeals concluded that because the "referendum did not authorize METRO to use any property taxes to fund the implementation of the authorized transit plan," "Scarbrough cannot argue that any of her property taxes are being used to fund the complained-of activity." *Id.* Similarly, in this case,

there is no authorization for the County or the Foundation to use ad-valorem taxes to fund the project at issue. *See id.* Therefore, Teneyuca and Salazar cannot argue that any of their ad-valorem taxes are being used to fund the complained-of activity. *See id.* We hold Teneyuca and Salazar's payment of ad-valorem taxes is not sufficient to confer taxpayer standing in this case.

Because Teneyuca and Salazar do not have taxpayer standing to bring their claims, we affirm the trial court's judgment.


Karen Angelini, Justice